UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TROY CLINTON VAN SICKLE,<br><br>Defendant. | CASE NO. CR18-0250JLR<br><br>ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |

## I.  INTRODUCTION

Before the court is Defendant Troy Clinton Van Sickle's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(1), commonly referred to as a motion for compassionate release. (*See* Mot. (Dkt. # 54); *see also* Reply (Dkt. # 61); Mestel Supp. Decl. (Dkt. # 65) (sealed).) Defendant United States of America ("the Government") opposes Mr. Van Sickle's motion. (*See* Resp. (Dkt. # 60) (sealed).) The court has considered Mr. Van Sickle's motion, the parties' submissions filed in support of and in

//

ORDER - 1

opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES Mr. Van Sickle's motion.

## II.   BACKGROUND

On June 24, 2019, Mr. Van Sickle entered a guilty plea to an advanced-fee scheme charged as mail fraud. (*See* Plea Agreement (Dkt. # 36); R&R re: Guilty Plea (Dkt. # 37); 6/24/19 Min. Entry for Change of Plea Hr. (Dkt. # 34); Guilty Plea Order of Acceptance (Dkt. # 38).) The scheme involved contacting investors and offering to assist them in recovering investment losses in exchange for a fee. (*See* Plea Agreement ¶ 9.) Part of the scheme involved falsely and fraudulently seeking to create the illusion of genuine romantic relationships with certain individuals in order to win the investors' trust. (*See id.*) Mr. Van Sickle solicited loans from the investors that he never intended to use to facilitate the recovery of investors' prior investment losses and never intended to repay as he had promised to do. (*See id.*) Instead, he fraudulently converted investors' funds for his own use. (*See id.*)

Prior to the September 30, 2019, sentencing hearing, the Probation Office prepared a Presentence Report ("PSR"). (*See* PSR (Dkt. # 39) (sealed).) The Probation Office determined that Mr. Van Sickle's criminal history category was VI, his total offense level was 11, and his sentencing guideline range was 27 to 33 months' imprisonment. (*See id.*

//

---

[1] Neither party seeks oral argument. (*See* Mot. at 1; Resp. at 1); *see also* Local Rules W.D. Wash. CrR 12(b)(12) ("A party desiring oral argument shall so indicate by typing ORAL ARGUMENT REQUESTED in the caption of the motion or responsive brief."). The court does not consider oral argument to be helpful to its deliberative process here. *See id.* ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

¶¶ 32, 44, 67.) In calculating Mr. Van Sickle's criminal history, the Probation Office noted that since 1991, Mr. Van Sickle has been convicted of numerous felonies, including: (1) perjury in the second degree (*id.* ¶ 38); (2) theft in the first degree on three separate occasions (*id.* ¶¶ 34, 37, 41); (3) felony theft and felony fraudulent schemes (*id.* ¶ 42); and (4) trafficking in stolen property (*id.* ¶ 43). The Probation Office also noted that Mr. Van Sickle had been convicted of other offenses which did not count in calculating his criminal history, including: (1) theft in the first degree (*id.* ¶ 35); (2) unlawful issuance of bank checks (*id.* ¶ 36); and (3) violation of a protective order—domestic violence (*id.* ¶¶ 39-40). Ultimately, the court sentenced Mr. Van Sickle, who was 48 years old at the time, to 30 months' imprisonment and three years of supervised release. (*See* 9/30/19 Min. Entry (Dkt. # 48); *see also* Judgment (Dkt. # 49).)

In the PSR, the Probation Office also discussed Mr. Van Sickle's health, noting that he "is in generally good health though he suffers from high blood pressure and tinnitus," and further noting that he "is not taking medications, prescription or otherwise, at this time." (*Id.* ¶ 57.)

On October 30, 2019, Mr. Sickle timely self-reported to FCI Terminal Island to begin his sentence. (*See* Gov. Ex. 1 (Dkt. # 60-1) at 1, 3; *see also* Reply ¶ 4 (stating that "the Court allowed Mr. Van Sickle to self-surrender to FCI [Terminal Island]," and he "reported on the day and time ordered by BOP").) During his health screening that day, he denied having respiratory issues, but did report having high cholesterol, for which he took the medication Simvastatin. (*See* Gov. Ex. 1 at 1, 3.) On November 7, 2019, Mr. Van Sickle told prison medical personnel that he was a healthy person without

complaints, that he was not taking any medications, and that his hypertension had "resolved." (Gov. Ex. 2 (Dkt. # 60-1) at 1.)

Prison medical personnel examined Mr. Van Sickle again on November 12, 2019. (*See* Gov. Ex. 3 (Dkt. # 60-1).) He again denied having any respiratory conditions (*id.* at 1), which the prison medical personnel confirmed with a finding that Mr. Van Sickle's "Respiratory System" was "Within Normal Limits" (*id.* at 7). In addition, Mr. Van Sickle's blood pressure was 115/78, which is consistent with his earlier report that his high blood pressure issues had resolved. (*Id.* at 5.) Subsequent tests of Mr. Van Sickle's blood pressure, between November 2019 and January 2020, were also consistent his prior report that these issues had resolved. (*See* Gov. Ex. 4 (Dkt. # 60-1) at 1-2 (indicating blood pressure measurements of 124/88, 119/80, and 119/79).)

On April 3, 2020, the Attorney General directed the Bureau of Prisons ("BOP") facilities where Coronavirus Disease 2019 ("COVID-19") was materially affecting operations to review all inmates who had COVID-19 health risk factors to determine if any of those inmates were suitable for home confinement and, if so, to immediately process those inmates for transfer. (*See* Resp. at 4-5.)

On April 10, 2020, Mr. Van Sickle reported to BOP that he had a history of asthma, high cholesterol, and high blood pressure. (Gov. Ex. 5 (Dkt. # 60-1) at 1.) In taking his blood pressure that day, prison medical personnel found that it was elevated at 161/105 and prescribed him Lisinopril. (*Id.*) In addition, prison medical personnel scheduled a peak and flow test to evaluate Mr. Van Sickle for asthma and to determine if he qualified for an albuterol inhaler. (*Id.*) At the present time, Mr. Van Sickle is receiving

medications for both hypertension and asthma. (Mestrel Supp. Decl. ¶ 2.a, App. A.) Based on tests related to his blood sugar, prison medical personnel also concluded that Mr. Van Sickle is pre-diabetic. (*Id.* ¶ 2.b, App. A.) Prison medical personnel also tested Mr. Van Sickle for COVID-19, but the test was negative. (*Id.* ¶ 2.c, App. A.)

As of April 30, 2020, 570 inmates and ten staff at FCI Terminal Island had tested positive for COVID-19, and two inmates had died from the disease. (*See id.* ¶ 5.) By May 6, 2020, less than one week later, BOP confirms 621 inmates and 15 staff at FCI Terminal Island are positive for COVID-19, and six inmates have died. *See* https://www.bop.gov/coronavirus/ (last visited May 6, 2020).[2] The BOP reports that there are currently 1,051 inmates at FCI Terminal Island. *See* https://www.bop.gov/locations/institutions/trm/ (last visited May 6, 2020).[3] Thus, approximately 59% of the inmates at the facility have tested positive for the virus.

Mr. Van Sickle states that on March 14, 2020, he submitted a written request for compassionate release to the FCI Terminal Island's warden, and that on March 27, 2020, the warden orally denied his request. (Mot. at 3.) Mr. Van Sickle reports that his form was returned to him "without a written reason for its denial." (Reply ¶ 2.) Mr. Van Sickle states that the warden orally advised him that because he was not 65 years old and had not completed 75% of his sentence, he was not eligible for release. (*See* Mot. at 3.) Mr. Van Sickle did not receive a written decision from the warden. (*See id.*) Mr. Van

---

[2] *See King v. Cty. of L.A.*, 885 F.3d 548, 555 (9th Cir. 2018) ("[W]e take judicial notice of the undisputed and publicly available information displayed on government websites.").

[3] *Id.*

Sickle did not attach a copy of his written request for compassionate release to the warden to his motion.  (*See generally id.*)

The Government requested a copy of Mr. Van Sickle's compassionate release request from BOP.  (Resp. at 5.)  BOP responded that its database did not reflect the filing of such a request, although BOP acknowledged that FCI Terminal Island is behind in logging its compassionate release requests.  (*Id.*)

On April 17, 2019, Mr. Van Sickle filed the current motion for compassionate release alleging that he suffers from medical conditions that qualify as risk factors for COVID-19.  (*See generally* Mot.)  He asks the court to reduce his sentence to time-served based on the COVID-19 crisis and the risk he asserts COVID-19 poses to him particularly.  (*See generally id.*)  Mr. Van Sickle is presently 49 years old and has a release date of December 15, 2021.  (Resp. at 5.)  The court now considers Mr. Van Sickle's motion.

### III.  ANALYSIS

A court generally may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35.  *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003); *see also Dillon v. United States*, 506 U.S. 817, 824-25 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.") (quoting 18 U.S.C. § 3582(b)).  One such statute is 18 U.S.C. § 3582(c)(1), which governs motions for compassionate release.  *See United States v. Fuller*, No. CR17-0324JLR, 2020 WL 1847751, at * 2 (W.D. Wash. Apr.

13, 2020).  Until recently, only BOP could bring a motion for the compassionate release of a prisoner, but the First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1) so that federal prisoners may now seek such release directly from the court.  The statute now provides the court with authority to reduce a sentence upon the motion of an inmate if three conditions are met:  (1) the inmate has either exhausted his or her administrative appeal rights of BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the United States Sentencing Commission's policy statement.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also Riley v. United States*, No. C19-1522JLR, 2020 WL 1819838, at *5 (W.D. Wash. Apr. 10, 2020).

The first condition the court considers is whether Mr. Van Sickle has exhausted his administrative remedies.  Mr. Van Sickle bears the burden of showing that he exhausted his administrative rights with the BOP before filing his compassionate-release motion.  *United States v. Johnson*, No. 4:00-CR-40023, 2020 WL 1434367, at *1 (W.D. Ark. Mar. 24, 2020) (citing *United States v. Davis*, No. 2:15-CR-20067-SHM, 2019 WL 6898676, at *1 (W.D. Tenn. Dec. 18, 2019)); *see also United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020) (holding that a defendant bears the burden of establishing his or her entitlement to sentencing reduction) (citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)); *United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing *United*

1 *States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased
2 punishment, he or she has the burden of showing that the circumstances warrant that
3 decrease.")).

4     In support of his position, Mr. Van Sickle, through his attorney, states that he
5 submitted a request for compassionate, with prison personnel assistance, on March 14,
6 2020. (*See* Mot. at 3; *see also* Reply ¶ 2.a ("Mr. Van Sickle . . . was the source for
7 information about his request to the Warden for Compassionate Release.").) He also
8 states that the warden denied his request on March 27, 2020, "verbally advising him that
9 because he was not 65 years old and had not completed 75% of his sentence, he was
10 ineligible for release." (Mot. at 3.) Mr. Van Sickle maintains that he was not given a
11 written decision or advised of his right to appeal the decision. (*Id.*)

12     If Mr. Van Sickle could demonstrate that he submitted a written request for
13 compassionate release to the warden on March 14, 2020, then his administrative remedies
14 under the statute would be exhausted because his April 17, 2020, motion was filed more
15 than 30 days after his request. *See* 18 U.S.C. § 3582(c)(1). BOP, however, has no record
16 in its database that Mr. VanSickle ever filed such a request. (*See* Resp. at 5.) True, BOP
17 acknowledges that FCI Terminal Island is behind in logging its compassionate release
18 requests (*see id.*), but it is not BOP that bears the burden of proof on this issue. Mr. Van
19 Sickle submits nothing more than his say so to demonstrate his exhaustion of
20 administrative remedies. He avers that his copy of his request to the warden for
21 compassionate release was returned to him. (*See* Reply ¶ 2.a ("The form was returned to
22 Mr. Van Sickle without a written reason for its denial.") Yet, he does not submit a copy

of the request with his motion.  (*See generally* Dkt.)  Due to Mr. Van Sickle's conduct in the underlying case and his many prior convictions of dishonesty, including perjury, *see supra* § II, Mr. Van Sickle's word, without more, is insufficient to meet his burden here.  The court agrees with the Government that Mr. Van Sickle has so abused his integrity that his word alone is insufficient to support the assertion he asks the court to accept.  (*See* Resp. at 8-9.)

Despite his assertion that he made the necessary request (*see* Mot. at 3), Mr. Van Sickle also argues that the court should create an extra-textual "special circumstances" exception to the statutory directive precluding the filing of a motion absent the exhaustion of administrative remedies (*id.* at 4).  "[M]andatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion" even in special circumstances.  *See Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1856-57 (2016) (concluding that a court may not excuse an inmate's failure to exhaust his or her administrative remedies prior to bringing suit under the Prison Litigation Reform Act, even to take "special circumstances" into account).  Here, the plain language of 18 U.S.C. § 3582(c)(1)(A) reveals that the administrative exhaustion requirement is mandatory in nature, stating that a court "may reduce the term of imprisonment" only "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *See* 18 U.S.C. § 3582(c)(1)(A).  The statute does not provide an exception to this exhaustion requirement.

1     The court recognizes the serious circumstances and difficulties posed by the
2 ongoing COVID-19 pandemic—particularly in the facility in which Mr. Van Sickle is
3 incarcerated.  Nevertheless, the court does not have the authority to waive the exhaustion
4 requirement, when, as here, it is both mandatory and the Government has properly raised
5 it in objection to a proposed waiver.  *See United States v. Gillis*, No. 14-cr-00712 SJO(1),
6 2020 WL 1846792, at *2 (C.D. Cal. Apr. 9, 2020).  Indeed, both this court and other
7 district courts in the Ninth Circuit which have considered this issue have nearly
8 unanimously concluded that failure to exhaust administrative remedies is fatal to a
9 compassionate release motion even in light of the urgency created by COVID-19.  *See*
10 *United States v. Fuller*, No. CR17-0324JLR, 2020 WL 1847751, at *2 (W.D. Wash. Apr.
11 13, 2020) (citing numerous cases).

12     Mr. Van Sickle provides no basis for the court to depart from these authorities in
13 this case.  Thus, the court concludes that it lacks the authority to consider Mr. Van
14 Sickle's motion for compassionate release.  The court, therefore, DENIES Mr. Van
15 Sickle's motion without prejudice to re-filing the motion once he complies with the
16 exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A) or can otherwise meet his burden
17 of proof that he already has done so.

18     Finally, although the court does not reach the merits of Mr. Van Sickle's motion,
19 the court cautions Mr. Van Sickle that it considers motions for compassionate release
20 from imprisonment due to the COVID-19 pandemic to be highly fact-intensive and
21 dependent on—among other possible factors—the specific conditions of confinement,
22 medical conditions faced by the defendant, and the risks or danger to the community

should release otherwise be warranted. *See* 18 U.S.C. § 3582(c)(1)(A); United States Sentencing Guidelines ("USSG") § 1B1.13. In his present motion, Mr. Van Sickle addressed this final element in only a cursory manner. (*See* Mot. at 16.) However, just because Mr. Van Sickle's criminal history does not include crimes of violence, he should not assume that he bears little or no burden with respect to demonstrating that he does not pose a danger to the community. The court notes that, due to the economic impacts of the COVID-19 pandemic, large segments of the public have recently suffered severe financial setbacks, unemployment, and other deprivations. These circumstances can lend themselves to even greater vulnerability to the very types of fraudulent schemes that Mr. Van Sickle has pursued in the past. *See supra* § II. Thus, if Mr. Van Sickle were to reapply for compassionate release following a demonstration that he has exhausted his administration remedies, he must meet his burden of proof on every required element, including whether his release would represent a danger to the community.

### III.   CONCLUSION

For the reasons stated herein, Mr. Van Sickle's motion for compassionate release (Dkt. # 54) is DENIED without prejudice to re-filing upon satisfaction of the exhaustion

//
//
//
//
//
//

1 requirements of 18 U.S.C. § 3582(c)(1)(A) or an adequate demonstration that he has
2 already done so.
3     Dated this 7th day of May, 2020.

                              JAMES L. ROBART
                              United States District Judge